CNR
F. #2014R01966

JAN 03 2017

**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

FRANK PARASMO,

        Defendant.

- - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

**TO BE FILED UNDER SEAL**

**COMPLAINT AND AFFIDAVIT IN SUPPORT OF ARREST WARRANT**

(21 U.S.C. § 841)

MJ 17- 004 

ANTON C. KOHUT, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration, duly appointed according to law and acting as such.

On or about and between August 10, 2010 and December 4, 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FRANK PARASMO did knowingly and intentionally distribute controlled substances, which offenses involved substances containing oxycodone, Schedule II controlled substance, without a legitimate medical purpose.

(Title 21, United States Code, Section 841)

The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this Complaint and Affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

1. I have been a Special Agent with the Drug Enforcement Administration ("DEA") for over 19 years. I am currently assigned to the Long Island District Office. During my tenure with the DEA, I have participated in numerous investigations involving the illegal distribution of controlled substances by medical professionals outside the usual course of professional practice and not for a legitimate medical purpose.

2. I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file and my discussions with and review of reports from other law enforcement officers involved in the investigation. I have also conferred with a medical doctor who is a pain management specialist ("Pain Management Specialist #1") about this investigation.

## INTRODUCTION

3. I am participating in an investigation of the defendant FRANK PARASMO, a medical doctor specializing in internal medicine, who is a principal in the practice P & C Management Group, Inc. in Deer Park, New York. This investigation revealed that PARASMO illegally distributed hundreds of prescriptions for Schedule II controlled substances outside the usual course of professional practice and not for a legitimate medical purpose.

## THE DISTRIBUTION OF CONTROLLED SUBSTANCES GENERALLY

4. The Controlled Substances Act, 21 U.S.C. §§ 801 et seq., and regulations promulgated thereunder, classify controlled substances in five schedules. Schedule I controlled substances, including, for example, heroin and LSD, do not have an acceptable medical use in the United States. Schedule II through Schedule V controlled

3

substances have acceptable medical uses. The medical use of Schedule II controlled substances, including oxycodone and hydrocodone, is severely restricted because such drugs have a high abuse potential. Schedule III controlled substances have an abuse potential less than those in Schedule II, but more than Schedule IV controlled substances, and so forth. Schedule V controlled substances consist primarily of preparations containing limited quantities of certain narcotics and stimulant drugs.

       5.       Pursuant to Title 21, C.F.R. §§ 1306.11(a) and 1306.21(a), a controlled substance listed in Schedules II, III, IV or V, that is a prescription drug, as determined under the Food, Drug & Cosmetics Act, 21 U.S.C. §§ 301 et seq., may be dispensed only if prescribed by an authorized practitioner.

       6.       Title 21, C.F.R. § 1306.04(a) sets forth the purpose of the issuance of a prescription. It says, in pertinent part, in order for "[a] prescription for a controlled substance to be effective, [it] must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner…[a]n order purporting to be a prescription issued not in the usual course of professional treatment…is not a prescription within the meaning and intent of section 209 of the Act (21 U.S.C. 829) and…the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

       7.       Oxycodone is semi-synthetic opioid analgesic medication classified as a Schedule II controlled substance that is generally prescribed for the relief of moderate to severe pain.

## BACKGROUND OF THE INVESTIGATION

8.  In the fall of 2014, the DEA began an investigation into the defendant FRANK PARASMO's practices after receiving information from a probation officer regarding PARASMO's continued prescribing of oxycodone to a well-documented poly-drug abuser in a drug treatment program.

9.  Thereafter, the DEA obtained records from the New York State Bureau of Narcotics ("BNE") for prescriptions written by defendant FRANK PARASMO and filled between January 2010 and early December 2014. In that time period, PARASMO wrote more than 6,000 oxycodone prescriptions totaling over 776,000 pills, a disproportionally high number for a specialist in family medicine.

10. On or about July 2, 2015, the DEA obtained twenty-six patient files from defendant FRANK PARASMO's medical practice – P&C Management Group, Inc. ("PCMG"). The DEA obtained additional patient files from PCMG in August 2015, January 2016 and February 2016. The DEA also interviewed many PCMG patients and employees. In conjunction with the DEA investigation of PARASMO, agents from the Federal Bureau of Investigation and the United States Department of Health and Human Services, Office of the Inspector General, also reviewed medical billing records from PCMG. Furthermore, the DEA has consulted with Pain Management Specialist #1 about proper use of opioid controlled substances and also certain PCMG patients' medical files

## PROBABLE CAUSE

11. A review of evidence obtained during the course of the DEA investigation revealed that defendant FRANK PARASMO prescribed Schedule II controlled

substances on a continuing basis to PCMG patients without a legitimate medical purpose after learning these patients (a) were or had been in treatment for substance abuse and/or received medication to treat opioid addiction, (b) had suffered non-fatal prescription drug overdoses, (c) abused illicit drugs such as cocaine and heroin, (d) sold or otherwise diverted their own medication or used medication prescribed to someone else, (e) tested positive for illicit substances such as cocaine, heroin and un-prescribed pain medication, and/or (e) were engaged in doctor shopping.   In some cases, PARASMO's own notes from the patients' medical files show he knew that certain patients were addicted to their prescribed medication (i.e. oxycodone), yet the defendant continued prescribing the patients opioids.   Multiple PCMG patients who were formally discharged in writing by PARASMO, or for whom PARASMO documented a refusal to prescribe any further opioid prescriptions - often for conduct delineated above - received prescriptions for controlled substances from PARASMO subsequent to their discharge.   PARASMO's willingness to provide prescriptions for such patients without legitimate medical purpose is further evidence of his illicit activity.

Patient #1

12.   For example, my review of the evidence gathered to date indicates that a PCMG patient, whose identity is known to the government ("Patient #1"), received prescriptions for controlled substances from defendant FRANK PARASMO.   Patient #1's medical files show that Patient #1 tested positive for cocaine at least eight times between April 2008 and June 2014.   PCMG medical file progress notes from December 2009 indicate that Patient #1 "buys Vicodin on street, uses mother's Vicodin, took his aunt's Dilaudid after

she died". A report from Stony Brook Hospital found in Patient #1's medical file and dated November 2013 indicated "pmhx IV drug abuse."[2]

13. Patient #1's medical file also contained an undated letter signed by defendant FRANK PARASMO explaining that prescribed controlled medications were not found in Patient #1's urine, and therefore "I can no longer write these prescriptions for you". Although the letter is undated, PARASMO told investigators that he had to discharge Patient #1 from his practice roughly two years prior to the summer of 2015 due to the presence of cocaine on Patient #1's toxicology screen and Patient #1's admission of cocaine use. In January 2015 and July 2015, I interviewed Patient #1, who confirmed his/her use of cocaine and un-prescribed medications as well as the discharge from PARASMO's practice due to an abnormal toxicology test. Patient #1 added that s/he had been "doctor shopping" by receiving oxycodone from two doctors at once, one of them being PARASMO. According to Patient #1, PARASMO knew this and allowed him/her to continue receiving oxycodone from him

14. In the summer of 2015, PARASMO told investigators that he had always been "trying to catch" Patient #1 doing something wrong with the oxycodone pills he had prescribed Patient #1. He then added "I think [Patient #1] was selling [Patient #1's] pills but I could not prove it". PARASMO also stated that he was aware the Patient #1 had been previously imprisoned following a heroin-related arrest, and that while in prison Patient #1 had been in a drug rehabilitation program for heroin addiction.

---

[2] The notation "pmhx" in a patient's medical file is a common abbreviation for prior medical history.

15. In October 2014, I interviewed Patient #1's probation officer who advised that she had spoken to defendant FRANK PARASMO by telephone about Patient #1 the same month. She advised PARASMO that during the course of an outpatient drug treatment program Patient #1 had tested positive for cocaine on seven occasions between May 2014 and October 2014, and had tested positive for heroin in October 2014. According to the probation officer, PARASMO stated that he was unsure Patient #1 needed all the oxycodone medication he had prescribed, that Patient #1 could be selling Patient #1's medication, and that he might have to wean Patient #1 off of oxycodone.

16. Patient #1's medical file also includes a copy of a report of a consultation in February 2010 with doctor who is a fellowship-trained pain management specialist on Long Island ("Pain Management Specialist #2"). Portions of the text of the consultation with Pain Management Specialist #2 were blocked out. In August 2015, I spoke to Pain Management Specialist #2, who explained that she had seen Patient #1 for a consultation in February 2010. During the consultation, Patient #1 admitted that Patient #1 was then buying oxycodone and hydrocodone on the street for two years, and also used cocaine. A comparison of Pain Management Specialist #2's records with the consultation report found in defendant FRANK PARASMO's medical files shows this information had been noted in her report, but blocked out in the copy found in PARASMO's file. Pain Management Specialist #2 went on to state that Patient #1 tested positive for cocaine in her office, and that given Patient #1's physical condition, cocaine use and use of un-prescribed medications, Patient #1 had no legitimate medical need for opioids and was not a candidate for opioid therapy.

17.     With respect to Patient #1, I spoke to Pain Management Specialist #1, who opined that given Patient #1's documented history of cocaine use by at least May 2010, there was no legitimate medical need for defendant FRANK PARASMO to prescribe Patient #1 oxycodone or hydrocodone.  Between August 10, 2010, and November 12, 2014, PARASMO illegally prescribed to Patient #1 8,310 oxycodone 30mg pills, 3,540 oxycodone 10mg pills, 960 oxycodone 5mg pills, 240 oxycodone 15mg pills, and 600 hydrocodone 10mg pills.

Patient #2

18.     Further review of the evidence gathered to date indicates that a PCMG patient, whose identity is known to the government ("Patient #2"), received prescriptions for controlled substances from defendant FRANK PARASMO.  In July 2011, PARASMO wrote in progress notes in Patient #2's medical file "Advised oxycodone BAD ADDICTION". Progress notes further include the statement in November 2011 "Not to be seen anymore", in December 2011 "No pain meds from me", and in January 2012 "Will not give any medication to patient who blacked out his ER report".  PARASMO's files show that he continued prescribing opioids and other drugs to Patient #2 throughout this time period.  Patient #2's medical file also shows that s/he tested positive for heroin in July 2011, prescribed oxycodone was absent and un-prescribed opioids were present during at least five toxicology tests between June 2011 and October 2011.

19.     In February 2016, I interviewed Patient #2, who stated that s/he was addicted to the oxycodone and alprazolam being prescribed by defendant FRANK PARASMO.  Patient #2 added that Patient #2 started using heroin while seeing PARASMO,

and that s/he had obvious needle marks in his/her arms during that time period. Patient #2 described being under the heavy influence of drugs while in PARASMO's office, so much so that on one occasion Patient #2 fell asleep in PARASMO's waiting area and a staff member had to physically shake Patient #2 awake for his/her office visit with PARASMO. Patient #2 added that s/he had told PARASMO that Patient #2 had previously been treated for cocaine abuse. Patient #2 also recalled a conversation with PARASMO in which the two discussed the fact that Patient #2 was "doctor shopping" simultaneously being prescribed methadone by one doctor and also oxycodone by PARASMO. Finally, Patient #2 noted that PARASMO never physically examined nor otherwise touched Patient #2 in any way.

20. With respect to Patient #2, I spoke to Pain Management Specialist #1 who opined that given defendant FRANK PARASMO's own notes that Patient #2 was addicted to oxycodone, by at least July 13, 2011, there was no legitimate medical need for defendant FRANK PARASMO prescribe Patient #2 oxycodone. Between July 13, 2011 and December 8, 2011, PARASMO illegally prescribed to Patient #2 150 oxycodone 30mg pills, 60 oxycodone 20mg pills and 500 oxycodone 15mg pills.

Patient #3

21. In August 2015, I interviewed a PCMG patient, whose identity is known to the government ("Patient #3"), who stated s/he and his/her paramour had joint office visits with defendant FRANK PARASMO, during which they jointly met with PARASMO in an exam room and received the same prescriptions for oxycodone and hydromorphone without physical examinations. Patient #3 acknowledged ultimately selling the oxycodone and hydromorphone prescribed by PARASMO in order to purchase and inject heroin. Patient

#3's medical file included a notation from August 2013 "Note: Pt seen to have mult track marks from IV drug abuse." Patient #3's medical file also showed multiple abnormal toxicology test results, to include cocaine in August 2013 and heroin in June 2014. A toxicology test report in the file dated September 2013 included the handwritten notation "past heroin use". Patient #3's medical file included a discharge letter dated November 19, 2013, signed by PARASMO, that notified Patient #3 that "... I will no longer be prescribing Narcotic nor Control substances... Effective immediately."

22. With respect to Patient #3, I spoke to Pain Management Specialist #1 who opined that given Patient #3's August 2013 test result indicating cocaine use and the notation the same month regarding intravenous needle marks, by at least September 4, 2013, there was no legitimate medical need for defendant FRANK PARASMO to prescribe Patient #3 oxycodone. Between September 4, 2013, and December 4, 2014, PARASMO illegally prescribed to Patient #3 3,672 oxycodone 15mg pills.

Patient #4

23. In November 2015, I interviewed a PCMG patient, whose identity is known to the government ("Patient #4"), who stated that defendant FRANK PARASMO prescribed Patient #4 increasing amounts of oxycodone without physical examinations and with no treatment plan for opioid therapy. Patient #4 recalled visiting PARASMO's office "dope sick" on multiple occasions, and Patient #4 began injecting heroin into the back of his/her hands while under PARASMO's care. Patient #4 stated that the needle and track marks on back of his/her hands were very obvious, as Patient #4 did not cover his/her hands during visits to PARASMO's office. In August 2013 PARASMO noted in Patient #4's

progress notes "Heroin in urine screen". Patient #4 further stated that Patient #4 consumed his/her PARASMO-prescribed oxycodone too quickly, consuming a month's worth of medication in about two weeks. Patient #4 said s/he told PARASMO that Patient #4 was eating oxycodone pills like "Tic Tacs." Patient #4's medical file included a November 2012 notation "Doubled up on meds", and a November 2013 notation ""Took 16 x 30mg oxy a day for two weeks". PARASMO's medical file indicates that at this time he was prescribing Patient #4 just eight 30mg oxycodone pills per day. Additionally, Patient #4 stated that in October 2013 Patient #4 spent one week at a drug detoxification/rehabilitation facility on Long Island to address Patient #4's oxycodone addiction. Following this event, Patient #4 told PARASMO about the drug treatment program. In October 2013 PARASMO wrote in Patient #4's medical file "went through detox".

24. With respect to Patient #4, I spoke to Pain Management Specialist #1 who opined that given Patient #4's treatment for substance abuse, by at least October 16, 2013, there was no legitimate medical need for defendant FRANK PARASMO to prescribe Patient #4 oxycodone. Between October 16, 2013 and January 7, 2014, PARASMO illegally prescribed to Patient #2 900 oxycodone 30mg pills and 720 oxycodone 15mg pills

Patient #5

25. I have reviewed the PCMG medical file of an individual whose identity is known to the government ("Patient #5"). According to the file, as early as 1986 Patient #5 had been abusing alcohol and drugs, to include the intravenous use of cocaine. In early 2004, Patient #5 was involved in an automobile accident during which s/he was under the influence of alcohol. Defendant FRANK PARASMO then prescribed Patient #5 a combination of

three immediate-release opioid medications. Patient #5 was then not seen by PARASMO for roughly four months, although during this time PARASMO's office received communication pertaining to Patient #5 from a Long Island alcohol and drug treatment program. Between late July 2004 and late August 2004, PARASMO prescribed Patient #5 four opioid prescriptions. In particular, on August 18, 2004, PARASMO prescribed Patient #5 120 hydrocodone 20mg pills. On August 24, 2004, Patient #5 called PARASMO's office to get more controlled substances, but was rebuffed by another physician at PCMG who noted the hydrocodone prescription six days prior and noted in the file that Patient #5 "should have enough unless abusing meds". On August 30, 2004, PARASMO noted that Patient #5 was in withdrawal, having not had any hydrocodone in seven days.

26. Patient #5's file further showed that in 2008 and 2009 Patient #5 was consuming his/her pills at double the prescribed rate. In 2009, the file indicated that Patient #5 was "abusing medication", and s/he also suffered a non-fatal oxycodone overdose. In 2010, Patient #5 wrote a letter contained in the PCMG medical file suggesting s/he was addicted and needed to be tapered off medication. Patient #5's file also included the 2011 notation "too many pain pills". Between March 2, 2012 and April 3, 2012, Patient #5 claimed on three consecutive office visits that s/he had prescriptions and/or pills stolen and sought replacement prescriptions.

27. With respect to Patient #5, I spoke to Pain Management Specialist #1 who opined that given Patient #5's January 2004 automobile accident, communication from a drug/alcohol treatment center, and the fact that Patient #5 subsequently ran out of his/her monthly supply of opioid medication in just five days, by August 30, 2004 there was no

13

legitimate medical need for defendant FRANK PARASMO prescribe Patient #5 oxycodone. Between August 17, 2010 and March 3, 2012, PARASMO illegally prescribed to Patient #5 2,220 oxycodone 30mg pills and 1,050 oxycodone 10mg pills.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant FRANK PARASMO so that he may be dealt with according to law.

In addition, it is respectfully requested that this affidavit and arrest warrant be filed under seal until further order of the Court. The investigation into the activities of defendant FRANK PARASMO is continuing. Premature disclosure of this affidavit and arrest warrant could jeopardize the investigation and afford the defendant the opportunity to flee from prosecution.

_____
ANTON C. KOHUT
Special Agent
Drug Enforcement Administration

Sworn to before me this
3 day of January, 2017

/s/ Gary R. Brown
_____
THE HONORABLE GARY R. BROWN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK